## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JENNIFER R. V.,**

      **Plaintiff,**             **Case No. 1:19-cv-114**
                                 **JUDGE DOUGLAS R. COLE**
      **v.**                      **Magistrate Judge Litkovitz**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

On June 24, 2020, the Magistrate Judge issued a Report and Recommendation (R&R, Doc. 19) advising the Court to affirm the Commissioner of Social Security's (Commissioner) decision and to dismiss Plaintiff Jennifer V.'s (JV) Complaint (Doc. 1). JV timely objected to that R&R. (Doc. 21). For the reasons stated more fully below, the Court **OVERRULES** JV's Objections to the Magistrate Judge's Report and Recommendation (Doc. 21), **ADOPTS** the R&R (Doc. 19) in full, and **DISMISSES** JV's Complaint (Doc. 1) **WITH PREJUDICE**.

## BACKGROUND

### A.    Prior Proceedings

JV first applied for social security benefits back in 2008 and 2009. (R&R, Doc. 19, #1761). An Administrative Law Judge (ALJ) granted her application on November 16, 2012, and determined that her legal disability began on March 5, 2008. (Doc. 3-3,

#118–19).[1] The ALJ found that JV suffered from complex regional pain syndrome and a history of polysubstance abuse, which rendered her unable to perform even sedentary work. (*Id.* at #115–16). Accordingly, JV began receiving disability benefits.

In late 2014, the Social Security Administration (through its state agency counterpart, the Ohio Division of Disability Determination) initiated its periodic review of JV's continued eligibility for those benefits. (Doc. 3-7, #472). As part of that process, the Ohio Division of Disability Determination sent an investigative unit (the Cleveland Cooperative Disability Investigation Unit) to visit JV at her home using the ruse of an unrelated law enforcement matter to examine her symptoms. (*Id.* at #475). The investigative unit noted that JV greeted them at the door and then tried to drag her large dog to a different area of the home. (*Id.* at #476). They witnessed her place her full weight on both legs and attempt to use force to move the dog. (*Id.*). After reviewing the report, a Disability Examiner determined that JV's disability ceased. (Doc. 3-3, #122). A Disability Hearing Officer upheld that determination. (Doc. 3-4, #202).

JV appealed, requesting a hearing before an ALJ. She and Corinna Davies, a vocational expert (VE), testified in December 2017 at that hearing. (Doc. 3-2, #62–63). JV testified that she did not believe she could work because she was unable to "lift things long enough, hold things, push things, [or] move things," and because of her "horrible anxiety." (*Id.* at #72). After JV finished describing her medical

---

[1] The parties cite to the administrative record using the record page numbering convention "Tr. #." Those documents are now filed under docket entry 3 and have PageID numbers, which is the citation style the Court will use.

impairments, the ALJ asked the VE whether, assuming JV could perform only light work and was limited to occasional climbing of stairs, ramps, among other physical restrictions, she could perform work in the national economy. (*Id.* at #100–01). The VE testified that JV could work as a laundry article sorter, a machine feeder, or a table worker. (*Id.* at #101–02). The ALJ also asked the VE to advise whether her testimony diverged from the Dictionary of Occupational Titles (DOT).[2] (*Id.* at #100). The VE did not so advise.

The ALJ issued her opinion on April 4, 2018, finding that JV's current impairments included complex regional pain syndrome with ongoing generalized pain, a history of polysubstance abuse, degenerative changes with chronic polyarthralgias, depression, anxiety, and post-traumatic stress disorder (PTSD). (*Id.* at #40). The ALJ categorized these impairments as "severe" under 20 C.F.R. § 416.994(b)(5)(v). (*Id.* at #41–44). Still, despite JV's impairments, the ALJ found that JV could perform light work (as defined in 20 C.F.R. § 416.967(b)) with some limitations. (*Id.* at #44). Because of her ability to perform light work, the ALJ found that JV could perform a significant number of jobs in the national economy and was therefore not disabled. (*Id.* at 53). The ALJ concluded that JV's disability had ended on January 19, 2015, and that she had not become disabled again since. (*Id.* at #54). In December 2018, the Appeals Council of the SSA declined to review the ALJ's decision. (*Id.* at #24).

---

[2] The Dictionary of Occupational Titles is a table of jobs, coded by exertion level and reasoning level. It is maintained by the United States Department of Labor. *See Dictionary of Occupational Titles*, https://occupationalinfo.org/contents.html (last accessed Oct. 4, 2023).

**B.     Instant Proceedings**

On February 13, 2019, JV filed her Complaint asking the Court to reverse the ALJ's decision. (*See* Doc. 1). Pursuant to local rule, the Court assigned the matter to a Magistrate Judge. *See* S.D. Ohio Civ. R. 72.2; *see also* Cincinnati Gen. Order No. 14-01 (referring appeals from decisions of the Commissioner of Social Security regarding social security benefits to Magistrate Judges).

In September 2019, JV filed a Statement of Specific Errors (Doc. 10), identifying seven. In her view, the ALJ erred by:

1.  relying on the observations of two detectives with the Cleveland Cooperative Disability Investigations Unit;

2.  affording "some weight" to the assessments of the State Agency mental reviewers and by failing to consider the Psychiatric Review Technique (PRT) form completed by Dr. Ermias Seleshi;

3.  by affording only "some weight" to the opinion of Dr. Taylor Groneck;

4.  relying on the PRT form and the Mental Residual Functional Capacity Assessment of Dr. Karla Voyten;

5.  affording "some weight" to the opinion of Dr. Elaine Lewis;

6.  by failing to address the side effects of Gabapentin; and

7.  by relying on VE testimony that was purportedly inconsistent with information contained in the Dictionary of Occupational Titles (DOT) in violation of Social Security Ruling 00–4p.

(Doc. 10, #1706–11). In response, the Commissioner argued that the ALJ reasonably weighed all of the medical opinions, the ALJ reasonably considered the Cleveland Cooperative Disability Investigation Unit's report, failed to explain how discussion of Gabapentin would have altered the ALJ's analysis, and no inconsistency existed between the VE testimony and the DOT. (Opp'n, Doc. 17).

4

On June 24, 2020, Magistrate Judge Litkovitz issued her R&R, recommending that this Court affirm the decision of the Commissioner and close JV's case. (Doc. 19, #1789–90). The Magistrate Judge concluded, with respect to each alleged error, that the findings of the ALJ were supported by substantial evidence and that the ALJ had applied the correct legal standard. (*See generally* Doc. 19). On July 22, 2020, after requesting and receiving an extension of her time to object, Plaintiff timely did so (Doc. 21). The Court reviews accordingly.

## LEGAL STANDARD

The Court reviews an R&R de novo after a party timely objects. Fed. R. Civ. P. 72(b)(3). Such review applies only to "any portion to which a proper objection was made." *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013).

Faced with a proper objection, "[t]he district court 'may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(3)). By contrast, a purely general objection "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Thus, a litigant must identify each issue in the R&R to which she objects with sufficient clarity that the Court can identify it, or else that issue is deemed forfeited. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). Mere repetition of the arguments made before the magistrate judge,

5

without any explanation of error, constitutes an ineffective general objection. *Richard S. v. Kijakazi*, No. 7:19-cv-803, 2021 WL 3887690, *2 (W.D. Va. Aug. 31, 2021); *Kirks v. Fender*, No. 1:22-cv-1584, 2023 WL 3748437, *2 (N.D. Ohio June 1, 2023). When no party properly objects to an R&R, the Court must still review the R&R for clear error before adopting the recommendation. *Raymond R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-539, 2022 WL 2965289, *1 (S.D. Ohio July 7, 2022).

Such is the Court's normal standard. But that is not the only relevant standard of review here. The Magistrate Judge reviewed a decision by an ALJ employed by the Social Security Administration (SSA). As such, judicial review of the ALJ's decision is highly constrained, limited to determining whether "substantial evidence" and "proper legal standards" back the Commissioner's decision. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive … ."). Substantial evidence requires "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Proper legal standards include the SSA's own regulations. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009). In other words, even if substantial evidence supported a decision, the Court should not affirm if "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* (citation omitted).

Parsing these standards, the Court's job is to review de novo any portion of the R&R to which JV has properly objected and to determine whether the Magistrate Judge correctly decided that the ALJ's decision was grounded in substantial evidence and used the correct legal standards.

## LAW AND ANALYSIS

For purposes of social security disability benefits, a disability is defined in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). By regulation, the SSA has developed a five-step analysis to determine whether an individual meets this standard. *See* 20 C.F.R. § 416.920(a)(4). Once a claimant has established her disability and entitlement to benefits, the SSA must conduct a periodic review to ensure her eligibility continues. 20 C.F.R. § 416.994(a).

During this periodic review, the SSA determines whether the claimant experienced any medical improvement. 20 C.F.R. § 416.994(b). Medical improvement, under the statute, is "any decrease in the medical severity of [the claimant's] impairment(s)" as compared to the last review. *Id.* A medical improvement must be measurable—that is, it must manifest itself as an "improvement in the symptoms, signs, or laboratory findings associated with [the] impairment(s)." *Id.* (cleaned up). Generally, if the claimant's medical impairments have improved such that she can perform gainful work, her disability ceases.

7

But, as with many bureaucratic processes, the continued disability review is far from that simple. To demonstrate that a claimant is no longer disabled, the Commissioner must follow this seven-step process:

Step One: The Commissioner determines whether the claimant has an impairment that automatically qualifies for continued disability benefits (listed at 20 C.F.R. Part 404, Subpart P, Appendix 1).

Step Two: If the claimant does not automatically qualify for benefits under step one, the Commissioner must determine whether the claimant has medically improved.

Step Three: If the claimant has medically improved, the Commissioner must determine whether that improvement is related to her ability to work (i.e., whether the claimant's function has increased since the previous review). If no, the disability determination continues.

Step Four: If the claimant did not medically improve at step two or the medical improvement was deemed to be unrelated to the claimant's ability to work at step three, the Commissioner determines whether any exceptions (not relevant here) apply that would disqualify her from continued benefits. If none apply, the disability continues.

Step Five: If the claimant's medical improvement relates to her ability to work under step three, the Commissioner will consider anew whether claimant's impairments are severe. If not, the disability ceases.

Step Six: If the claimant's impairments are still severe notwithstanding her medical improvement, the Commissioner must make an individualized determination to assess whether the claimant's function has improved such that she can perform her past work. If she can, the disability ceases.

Step Seven: If the claimant cannot perform her past work, the Commissioner must determine whether she can perform any other work considering her age, education, work experience, and medical function. If she can perform other work, her disability ceases.

*See* 20 C.F.R. § 416.994(b)(5). In making this determination, the Commissioner bears the burden of proving the claimant's disability ended. *Kennedy v. Astrue*, 247 F. App'x 761, 765 (6th Cir. 2007).[3]

When traversing the seven steps prescribed by the regulations, ALJs consider evidence and testimony from various sources. When considering a claimant's medical impairments or symptoms, ALJs need not exclusively rely on medical professionals' opinions. *See* C.F.R. § 416.929(c)(3) ("We will consider all of the evidence presented, including … your statements about your symptoms … and observations by our employees and other persons."). When considering a medical professional's opinion,[4] a professional who has examined the claimant is generally entitled to greater weight than a non-examining professional. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). And for non-treating physicians,[5] the ALJ evaluates the medical opinion for its support with other medical evidence, its consistency with the record as

---

[3] Like the claim here, *Kennedy* dealt with supplemental security income. 247 F. App'x at 762. However, the *Kennedy* court cited the regulations governing disability insurance benefits when it laid out the standard it was to apply. *Id.* at 764–65 (citing 20 C.F.R. § 404.1594). That said, the two regulations are substantially identical, so *Kennedy*'s holdings still applies. *Compare* 20 C.F.R. § 404.1594 *with* § 416.994.

[4] The older regulations laid out in 20 C.F.R. § 416.927, rather than the newer regulations found in § 416.920c, apply to JV's claim because the ALJ issued her decision in 2015. The new and old rules governing the SSA's evaluation of medical opinions differ in that the older regulations create a presumption that treating and examining physician opinions are entitled to more weight than non-treating and non-examining medical opinions, respectively, whereas the new regulations review treatment and examining relationships merely as probative factors to consider when according a medical opinion weight. *Compare* 20 C.F.R. § 416.927(c)(1)–(2) *with id.* § 416.920c(c).

[5] While the old regulations create a presumption that examining sources are entitled to more weight than non-examining sources, only treating physicians are entitled to "controlling weight." *See* 20 C.F.R. § 416.927(c). The ALJ must still evaluate all non-controlling opinions, using the factors listed in the regulations. *Id.*

a whole, the specialization of the professional, and any other factor bearing on the reliability of the opinion. *See* 20 C.F.R. § 416.927(c)(2).

On top of evaluating the claimant's medical impairments, the ALJ must evaluate the claimant's ability to work jobs in the national economy (see step seven above)—often consulting vocational experts when doing so. When considering VE testimony, the ALJ must ask whether the VE testimony regarding a particular job's difficulty conflicts with the DOT maintained by the Department of Labor. S.S.R. 00–4P, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000). However, where a VE testifies that no conflict exists and the claimant is given the opportunity to cross-examine the VE, the ALJ need not interrogate the VE to determine whether such a conflict exists. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

JV's objections to the R&R largely mirror her statement of specific errors. Her objections boil down to four categories of alleged errors: (1) the ALJ's weighing of medical opinions; (2) the ALJ's failure to consider the side effects of Gabapentin; (3) the ALJ's failure to resolve a purported conflict between the VE testimony and the DOT; and (4) the ALJ's consideration of the Cleveland Cooperative Disability Investigations Unit's report.[6] (*See generally* Doc. 21).

---

[6] A recurring problem with JV's objections is that she appears to direct the objections to the ALJ's treatment of the various issues, rather than to the Magistrate Judge's handling of the ALJ's decision. For example, she challenges the portion of the R&R in which the Magistrate Judge rejected her challenges to the ALJ's assessments of Dr. Voyten's opinion. (Doc. 21, #1795–96). But the remainder of that "objection" just reiterates her argument that the ALJ erred, rather that couching it in terms of the Magistrate Judge's alleged error in affirming the ALJ's treatment. In other words, she is largely repeating the argument about the ALJ that she made to the Magistrate Judge in the first instance. This is not a proper form of objection. *Kirks*, 2023 WL 3748437 at *2.

### A.    Medical Opinions

JV claims, as she did in her statement of specific errors to the Magistrate Judge, that the ALJ weighed several medical opinions improperly. The Court considers each opinion in turn.

### 1.    Karla Voyten, Ph.D.

JV contends that the ALJ erred when she gave "some weight" to the testimony of Karla Voyten, a state agency mental reviewer who concluded that JV was "capable of performing simple and routine tasks in predictable settings where changes are infrequent and easily explained." (Doc. 21, #1796 (Doc. 3-8, #913)). She argues that because Voyten never examined JV and did not have the opportunity to review subsequent health records, that her opinion deserved no weight. (*Id.*). This "objection" repeats, almost verbatim, her argument to the Magistrate Judge in her statement of specific errors. (*Compare id. with* Doc. 10, #1708). JV's objection does not mention the Magistrate Judge's R&R at all and fails to allege any error in her analysis. Her objection is therefore an ineffective general objection, which means she forfeits this argument.

In any event, the Magistrate Judge's R&R was thorough and well-reasoned— it highlighted the ALJ's comprehensive review of both the medical evidence supporting Voyten's opinion and subsequent health records as well. (Doc. 19, #1778– 79). The Court finds no clear error. JV's first objection is **OVERRULED**.

### 2. Dr. Taylor Groneck

JV argues that the ALJ erred because she failed to give "great weight" to Dr. Groneck's opinion. (Doc. 21, #1797). Dr. Groneck stated in her report that JV "may require" breaks during panic attacks, "may appear" vigilant around male coworkers, and "may have" difficulty adjusting to major or unexpected changes in the workplace. (Doc. 3-7, #502). She also said that JV appeared reliable and did not seem to exaggerate her symptoms. (Doc. 3-7, #501). JV claims that the ALJ should have given more weight to Dr. Groneck's opinion because she examined JV, and her conclusions were consistent with JV's health records from her counseling provider. (Doc. 21, #1796–97). She also claims that the ALJ failed to discuss Dr. Groneck's assessment of JV's credibility. (*Id.*).

On this last point, JV fails to demonstrate how the ALJ's decision to focus on Dr. Groneck's medical opinion rather than her assessment of JV's credibility was erroneous. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). The ALJ was not required to credit Dr. Groneck's opinion of JV's honesty—a quintessentially non-medical matter. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("Credibility determinations are peculiarly the province of the finder of fact"—here, the ALJ. (citation omitted)); *cf.* 20 C.F.R. § 416.927(c)(5) (giving more weight to a physician's opinion on matters related to his area of specialty rather than areas in which he does not specialize).

As to the proper weight of Dr. Groneck's medical opinion, the Magistrate Judge rejected JV's argument noting that Dr. Groneck performed one consultative

examination, did not have a treating relationship with JV, failed to quantify JV's limitations, and was equivocal in her conclusions. (Doc. 19, #1782). Because Dr. Groneck was not a treating physician, the ALJ was not required to give her opinion controlling weight. *See* 20 C.F.R. § 416.927(c). The ALJ was free to evaluate Dr. Groneck's opinion based on its support in the medical record, the physician's specialization, and various other factors. *Id.* The ALJ permissibly gave Dr. Groneck's opinion "some weight" because her conclusions were vague and the foundation for her opinion (one consultative exam) was not extensive. (Doc. 3-2, #50).

It is also difficult to discern how Dr. Groneck's opinion helps JV. As the ALJ noted, "her assessment and findings do not suggest any marked limitations and generally supports the findings of moderate limitations in this decision." (*Id.* at #50). So even if the ALJ gave greater weight to Dr. Groneck's opinion, it would not have had an appreciable effect on the ALJ's conclusion as to JV's ability to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014). The ALJ's decision to give Dr. Groneck's opinion "some weight" was supported by substantial evidence. JV's second objection is **OVERRULED**.

### 3. Dr. Ermias Seleshi

JV next argues that the ALJ failed to consider Dr. Ermias Seleshi's Psychiatric Review Technique (PRT) form. (Doc. 21, #1798 (Doc. 3-7, #513–25)). The Magistrate Judge explained this purported oversight by noting that the ALJ, when referencing the "state agency mental reviewers," inadvertently referenced Exhibit B8F rather than B9F (Dr. Seleshi's form). (Doc. 19, #1780). JV objects that the Magistrate Judge's

explanation is pure speculation. (Doc. 21, #1798). The Court disagrees. The context surrounding the ALJ's statement demonstrates that she intended to reference Dr. Seleshi's form but made a purely clerical error in citing to a physical medical functional assessment.

The ALJ detailed the extensive health records regarding JV's *mental* impairments and substance abuse, listing the objective medical records prior to the medical consultants' opinions. (*See* Doc. 3-2, #46–48 (describing JV's problems with alcohol and anxiety as evidenced by numerous trips to the hospital)). After describing JV's mental health history, the ALJ turned to medical opinions, stating, "[a]s for the opinion evidence, some weight is given to the assessment of the state agency *mental* reviewers, who limited the claimant to performing simple, routine tasks in a predictable setting where changes are infrequent and easily explained. (Exhibits B8F, B20F, and B21F)." (*Id.* at #49 (emphasis added)). Exhibit B8F is a *physical* residual functional capacity assessment, completed by evaluating the claimant's health records and determining what physical exertion level she may perform in the course of work. (*See* Doc. 3-7, #507–09). The form does not involve any mental review of the claimant, so it is doubtful the ALJ intended to cite that exhibit. Exhibit B9F is the PRT form of Dr. Seleshi that evaluated JV's mental limitations. (*See* Doc. 3-7, #513–25). Furthermore, the ALJ's decision, after reviewing the *mental* reviewers' opinions, analyzed JV's *physical* limitations and accorded "[l]ittle weight to the physical assessment of the state agency at the initial level, which was that the claimant had no physical limitations"—citing again to "Exhibit B8F." (Doc. 3-2, #49).

The ALJ clearly did not intend to refer to Exhibit B8F as a mental assessment—since the form did not conduct such an assessment. Nor would the ALJ have accorded Exhibit B8F both "some" and "little" weight at the same time.

Given the context of the ALJ's statement, the Court agrees with the Magistrate Judge that the ALJ substantively considered Dr. Seleshi's assessment and simply committed a typographical error in her citation to the report. *Tina D. v. Comm'r of Soc. Sec.*, 3:22-cv-152, 2023 WL 2759861, at *8 (S.D. Ohio Apr. 3, 2023). Because the report was substantively considered, JV's third objection is **OVERRULED.**

### 4.    Dr. Elaine Lewis

JV next asserts that the ALJ erred by giving any weight to Dr. Elaine Lewis's opinion. (Doc. 21, #1798–99). Dr. Lewis concluded that JV could perform what is the equivalent of light work with some restrictions. (*See* Doc. 3-8, #886–94). JV's objection merely repeats the argument she made in her statement of errors and is therefore forfeited. (*Compare* Doc. 21, #1798–99 *with* Doc. 10, #1708).

But even considering the merits, JV's argument is that the ALJ *should have wholly disregarded* a medical opinion that was, at minimum, conducted by a qualified professional simply because the opinion could not account for health records created after the assessment.[7] But as the Magistrate Judge noted with reference to Dr. Voyten's opinion, which is equally applicable to JV's argument regarding Dr. Lewis,

> There will always be a gap between the time the agency experts review the record and the time the hearing decision is issued. Absent a clear

---

[7] And lest there be any doubt, Dr. Lewis expressly listed in her notes her understanding of all of the relevant medical encounters that occurred *before* she conducted her medical functional review. (Doc. 3-8, #893–94).

> showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.

(Doc. 19, #1777 (quoting *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009)) (cleaned up)). JV has not made that showing. In fact, the opposite is true. The ALJ took pains to examine the medical records postdating Dr. Lewis's opinion and found them consistent with her conclusions. (Doc. 3-2, #49–50 (describing JV's normal gait and ability to move all extremities in 2015, and describing the same in 2017). The ALJ's decision was supported by substantial evidence, and the Court finds no clear error in the Magistrate Judge's analysis. JV's fourth objection is **OVERRULED**.

## B.    Side Effects of Gabapentin

JV next argues that the ALJ failed to consider the side effects of Gabapentin when evaluating JV's ability to work. (Doc. 21, #1799). She states that she was prescribed Gabapentin on May 24, 2017, and experienced drowsiness as a result. (*Id.*). While it is true that the ALJ did not consider Gabapentin's side effects, the failure to consider those purported side effects did not render the ALJ's decision unsupported by substantial evidence. *Thacker*, 99 F. App'x at 665. As the Magistrate Judge concluded, (Doc. 19, #1786), the record reflects that JV experienced drowsiness only when she *first took* Gabapentin—she was subsequently able to tolerate the medication. (Doc. 3-10, #1603).

JV disagrees. She claims that "the record reflects that Plaintiff continued to experience drowsiness as a result of the medication. (Tr. 1578 & 1573)." (Doc. 21,

#1800). True, the record does contain references to drowsiness. For example, Doc. 3-10, #1600–05 (corresponding to Tr. 1573) records JV's December 6, 2017, visit with Dr. Kudalkar (the prescribing physician); Doc. 3-10, #1605–10 (corresponding to Tr. 1578) records JV's August 23, 2017, visit with the same doctor; and Doc. 3-10, #1610–15 records JV's May 24, 2017, visit at the same office. These records show that Dr. Kudalkar listed Gabapentin as a medication and, directly below it, wrote, "S/e [side effects] drowsiness etc., usually dose dependent." (Doc. 3-10, #1604, 1609, 1614).

Based on these documents, JV argues in a conclusory fashion that "the records reflect that Plaintiff continued to experience drowsiness." (Doc. 21, #1800). Presumably, she means that she believes Dr. Kudalkar's side effects disclaimer is evidence that she experienced drowsiness. The problem with the argument is that, as noted above, this same entry appears in JV's May 24 visit record. But that is the visit where Dr. Kudalkar first *prescribed* the medication. (Doc 3-10, #1614–15). In other words, the side effects disclaimer that Dr. Kudalkar included in that medical record appeared in reference to a medication that JV had not yet taken, which clearly reveals that the form "S/e drowsiness" entry reflects the *general* side effects that Gabapentin may have It is not evidence that *JV herself* experienced those side effects.

Beyond that, even considering the administrative hearing transcript (which JV did not mention in her objection), and even assuming JV is credible (which the ALJ found questionable, (*see* Doc. 3-2, #45)), the Court could *at most* conclude that JV experiences drowsiness for only one hour directly after taking the medication. (*See* Doc. 3-2, #82). JV has not provided any reasons why that one hour of drowsiness

undermines the ALJ's disability determination. Because JV's conclusory arguments regarding the ALJ's failure to consider side effects of Gabapentin does not render her disability determination unsupported by substantial evidence, JV's fifth objection is **OVERRULED**.

## C.   Vocational Expert Testimony

JV argues that the VE's testimony conflicted with the DOT and that the ALJ failed to resolve the conflict. (Doc. 21, #1800–03). JV copied and pasted her objection from her statement of specific errors. (*Compare id. with* Doc. 10, #1709–11). This is not a proper objection, and the Court refuses to treat it as such. The Magistrate Judge did not clearly err. (*See* Doc. 19, #1788 (citing the correct legal rule that the ALJ is not required to interrogate the VE when the claimant can cross-examine him)). JV's sixth objection is **OVERRULED**.

## D.   Cleveland Cooperative Disability Investigation Unit Report

JV argues that the ALJ should not have considered the report of the disability investigation unit. (Doc. 21, #1803). But her objection is a boilerplate general objection that "relies on and incorporates" her prior arguments. (*Id.*). This argument is forfeited. The Magistrate Judge did not clearly err. (*See* Doc. 19, #1775–76 (noting that JV did not object to the admission of the report, (Doc. 3-2, #66), and that regulations permit an ALJ to consider non-medical evidence to evaluate symptoms, 20 C.F.R. § 416.929(c)(3))). JV's seventh and final objection is **OVERRULED**.

**CONCLUSION**

For these reasons, the Court **OVERRULES** JV's Objections (Doc. 21),

**ADOPTS** the Magistrate Judge's R&R (Doc. 19), **DISMISSES** JV's Complaint (Doc.

1) **WITH PREJUDICE**, and **DIRECTS** the Clerk to enter judgment and

**TERMINATE** this case on the Court's docket.

**SO ORDERED.**

October 10, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

19